UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| ALEXANDER GALLO HOLDINGS, LLC, *et al.*,[1] | : | Case No. 11-14220 (ALG) |
| | : | (Jointly Administered) |
| Debtors. | : | |

---------------------------------------------------------x

**FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, AND 507, BANKRUPTCY RULES 2002, 4001, AND 6004 AND LOCAL RULE 4001-2 (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING; (II) AUTHORIZING USE OF CASH COLLATERAL; (III) GRANTING LIENS AND PROVIDING SUPER-PRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION, AND (V) GRANTING RELATED RELIEF**

This matter is before the Court on the motion (the "Motion"), dated September 8, 2011, filed by the debtors and debtors in possession (collectively, the "Debtors") in the above-captioned Chapter 11 cases (the "Chapter 11 Cases") pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code"), Rules 2002, 4001, and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), requesting, among other things, entry of this final order (this "Final Order"):

(i)     authorizing the Debtors to obtain secured postpetition financing on a super-priority basis (the "Bayside DIP Facility") subject to the senior liens of the First Lien Secured Parties (defined herein) and senior to the liens of the Second Lien Secured Parties

---

[1]     The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Alexander Gallo Holdings, LLC (4040); Set Depo, LLC (4236); AG/Sanction LLC (2187); Unlimited Languages, Inc. (7755); The Hobart West Group, Inc. (9849); Deponet, LLC (0336); Esquire Deposition Services, LLC (9684); Esquire Litigation Solutions, LLC (0947); Esquire Solutions, LLC (9382); Hobart West Solutions, LLC (6005); and D-M Information Systems, Inc. (3504).

(defined herein), and for the Debtors to guarantee the payment of each of the other Debtors' obligations thereunder and under this Final Order, including, without limitation, principal, accrued interest, unpaid fees and expenses, and all other amounts due from time to time under the Bayside DIP Facility Documents (as defined herein) (collectively, the "Bayside DIP Obligations"), on the terms and subject to the conditions set forth in the Debtor-in-Possession Credit, Security, Pledge and Guaranty Agreement (the "Bayside DIP Agreement," a copy of which is attached to the Motion as Exhibit A, and together with each of the other Fundamental Documents (as defined in the Bayside DIP Agreement), the "Bayside DIP Facility Documents"), by and between Alexander Gallo Holdings, LLC ("AG Holdings") and The Hobart West Group, Inc. ("HW Group" together with AG Holdings, the "Borrowers"), as borrowers, the guarantors party thereto (the "DIP Guarantors"), Bayside Gallo Recovery, LLC or its affiliate ("Bayside"), as administrative agent (in such capacity, the "Administrative Agent"), and the lender parties thereto (collectively, the "DIP Lenders");

(ii)     authorizing the Debtors to execute and enter into the Bayside DIP Facility Documents and to perform such other and further acts as may be required in connection with the Bayside DIP Facility Documents;

(iii)     granting super-priority administrative expense claims to the Administrative Agent and the DIP Lenders payable from, and having recourse to, all pre-petition and post-petition property of the Debtors' estates and all proceeds thereof, subject only to payment of any administrative claims arising under the Stipulation For Use of Cash Collateral, Adequate Protection and Continuing Use of Purchase Cards On A Secured Basis entered into by and between the Debtors and the First Lien Agent (the "First Lien Administrative Claim") and as subordinated herein to the liens of the First Lien Agent and the Carve-Out (defined herein), and

granting senior or second priority liens for the benefit of the Administrative Agent and the DIP Lenders in all Collateral (defined herein) in accordance with the Bayside DIP Facility Documents and this Final Order, to secure any and all of the Bayside DIP Obligations;

(iv)     authorizing the Debtors to use "cash collateral" as defined in section 363 of the Bankruptcy Code ("Cash Collateral") in which any of the Prepetition Secured Parties has an interest pursuant to any Prepetition Loan Documents (each as defined herein); and

(v)     granting adequate protection to each holder of those certain Class B Notes (collectively, the "Second Lien Noteholders") issued pursuant to and in connection with that certain Second Amended and Restated Note and Warrant Purchase Agreement, dated as of November 30, 2007 (as may be amended, restated, supplemented or otherwise modified from time to time, the "Second Lien NPA" and together with the Second Lien Security Agreement, Second Lien Notes, Second Lien Guaranty, the Second Lien GAC Security Agreement (each as defined herein) and all other loan and security documents executed in connection therewith, the "Second Lien Loan Documents," together with the First Lien Credit Documents (defined herein), the "Prepetition Loan Documents"), by and among AG Holdings, as issuer, the Second Lien Noteholders, and Grace Bay Holdings II, LLC, as successor administrative agent (as administrative agent and/or collateral agent, as applicable, the "Second Lien Agent"; and together with the Second Lien Noteholders, the "Second Lien Secured Parties," and, together with the First Lien Secured Parties, the "Prepetition Secured Parties").

An interim hearing (the "Interim Hearing") on the Motion having been held before the Court on September 9, 2011, to consider entry of an interim order, which was entered on September 14, 2011 (the "Interim Order"), and a final hearing (the "Final Hearing") on the Motion having been held before the Court on October 5, 2011, to consider entry of this Final

Order; requisite notice in accordance with section 102 of the Bankruptcy Code and Bankruptcy Rule 4001(b)-(c) of the Motion, the relief requested therein, the Interim Hearing and the Final Hearing having been served by the Debtors on, among others, (i) the thirty largest unsecured creditors of the Debtors on a consolidated basis as certified by the Debtors or their noticing agent, (ii) counsel to the Administrative Agent and DIP Lenders, (iii) counsel to the Prepetition Secured Parties, (iv) the United States Trustee for the Southern District of New York, and (v) the Committee (as defined below); and upon the record made at the Interim Hearing and the Final Hearing, the record of the Chapter 11 Cases and the Declaration of Marc L. Pfefferle in Support of the Debtors' Chapter 11 Petitions and First Day Motions (the "Pfefferle Declaration"); and all objections to entry of the Final Order having been overruled or withdrawn; and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, THAT:

1.     Background.

(a)     On September 7, 2011 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Each Debtor is continuing in possession and management of its business and properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

(b)     No request has been made for the appointment of a trustee or examiner. On September 15, 2011, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Committee") consisting of the following members: (i) Receivable Management Services, Inc., (ii) Harvest Equity Partners, as Agent for Winston Noteholders, LLC, and (iii) Aptara, Inc.

(c)     The Court has core jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     Disposition.  The Motion is hereby granted on the terms set forth herein. Any objections to the relief sought in the Motion that have not previously been resolved or withdrawn hereby are overruled on the merits. This Final Order shall be valid, binding on all parties in interest and fully effective immediately upon entry by the Court.

3.     Notice.  The Final Hearing with respect to the Motion was held pursuant to the authorization of Rule 4001(c)(2) and notice of the hearing was given to the parties listed on the certificate of service filed in respect of the Motion.

4.     Debtors' Stipulations Regarding the Second Lien Notes.  In connection with the Bayside DIP Facility, the use of Cash Collateral and the entry of this Final Order, each of the Debtors hereby acknowledges, represents, stipulates and agrees that:

(a)     As of the Petition Date, each of the Debtors were obligors or guarantors of the Second Lien Notes issued pursuant to and in connection with the Second Lien NPA.  As of the date hereof, the outstanding principal amount of all issued and outstanding Second Lien Notes is approximately $22,000,000.00.

(b)     Obligations arising under the Second Lien Notes are direct obligations of AG Holdings.  Such direct obligations are guaranteed by all of the direct and indirect subsidiaries of AG Holdings (the "Guarantors"), pursuant to that certain Second Amended and Restated Guaranty Agreement, dated as of November 30, 2007, by and between the Guarantors and the Second Lien Agent (as may be amended, restated, supplemented or otherwise modified from time to time, the "Second Lien Guaranty").

(c)     To secure the obligations under the Second Lien Notes, AG Holdings entered into that certain Second Amended and Restated Security Agreement, dated as of November 30, 2007 (as may be amended, restated, supplemented or otherwise modified from time to time, the "Second Lien Security Agreement"), by and between AG Holdings, the Guarantors, and the Second Lien Agent.  Pursuant to the Second Lien Security Agreement, the Second Lien Agent was granted, for the benefit of the Second Lien Lenders, a security interest in, and continuing liens on, the "Collateral" as defined in Article 2 therein, which is hereby incorporated by reference (the "Prepetition Collateral"), subject only to the First Lien Security Interests (as defined below).

(d)     To further secure the obligations arising under the Second Lien Notes, Gallo Acquisition Corp. ("GAC"), the Second Lien Agent, and the Second Lien Noteholders have entered into that certain Security Agreement, dated as of September 22, 2008, pursuant to which GAC has granted the Second Lien Agent a security interest in all of its equity interests in HW Group (the "Second Lien GAC Security Agreement").

(e)     The Second Lien Secured Parties and Wells Fargo Bank, National Association, in its capacity as administrative agent (the "First Lien Agent"), in connection with that certain Credit Agreement, dated as of November 3, 2007 (the "First Lien Credit Agreement," together with all other loan and security documents, swaps, derivatives and treasury management documents executed in connection therewith, the "First Lien Credit Documents," and the Debtors' obligations thereunder, the "First Lien Obligations"), have also entered into that certain Subordination and Standstill Agreement, dated as of November 30, 2007, by and between the Second Lien Secured Parties, the First Lien Agent, AG Holdings, and the Guarantors (as amended, supplemented or otherwise modified from time to time, the "Subordination

Agreement"), governing their respective rights with respect to the Prepetition Collateral. Pursuant to the Subordination Agreement, the liens and security interests of the First Lien Agent and the lenders under and in connection with the First Lien Credit Agreement and the First Lien Credit Documents (collectively, the "First Lien Secured Parties") (including without limitation those liens and security interests provided for in a security agreement with GAC that is senior to the Second Lien GAC Security Agreement, the "First Lien Security Interests") are senior in priority to the Second Lien Security Interests (as defined below) on all Collateral (as defined below), regardless of the order, time or manner in which any liens attach to or are perfected in any of the Collateral, at all times, whether before, after or during the pendency of any insolvency proceeding.

(f)     The Debtors hereby agree that certain of the Prepetition Collateral constitutes Cash Collateral of the Second Lien Secured Parties, and is subject to the security interests of such parties in accordance with section 552(b) of the Bankruptcy Code.

(g)     Each of the Guarantors and AG Holdings acknowledges and agrees, and/or waives any objection and will not oppose any argument made with respect to the fact that it is obligated, indebted and liable, jointly and severally, to the Second Lien Secured Parties as described herein, that such indebtedness constitutes the legal, valid and binding obligations of the Debtors, that the liens, security interests, guaranties, grants and other assurances provided to the Second Lien Secured Parties as described with respect to the Second Lien Loan Documents constitute valid, perfected, non-avoidable and enforceable liens, security interests, guaranties, grants and other assurances, and that the Debtors do not have any claim, counterclaim, recoupment, setoff or defense of any kind or nature that would in any way affect, in whole or in part, the validity, enforceability, perfection, priority and non-avoidability of AG Holdings' and

the Guarantors' obligations under the Second Lien Notes and other Second Lien Loan Documents or any of the Second Lien Secured Parties' liens, claims or security interests with respect thereto (the "Second Lien Security Interests"), or which would in any way reduce or affect the obligations of the Debtors to pay any of the Second Lien Secured Parties' claims arising under the Second Lien Loan Documents (including with respect to interest, fees, expenses, charges and other obligations as provided in the Second Lien Loan Documents, the "Second Lien Obligations," and together with the First Lien Obligations, the "Prepetition Secured Obligations").

5.      Findings Regarding the Bayside DIP Facility Based on the Record at the Final Hearing.

(a)      Good cause has been shown for the entry of this Final Order.

(b)      The Debtors have an immediate need to obtain financing under the Bayside DIP Facility and the authorization to use Cash Collateral to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships, to make payroll, to make capital expenditures, to pay the costs of administration of their estates and to satisfy other working capital and operational needs.  The access of the Debtors to sufficient working capital and liquidity through the incurrence of new indebtedness is vital to the preservation and maintenance of the going concern values of the Debtors and to a successful reorganization of the Debtors.

(c)      The Debtors are unable to obtain financing on more favorable terms from sources other than the terms offered by the DIP Lenders under the Bayside DIP Facility Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors also are unable to obtain

secured credit under section 364(c) and (d) of the Bankruptcy Code on equal or more favorable terms than those set forth in the DIP Credit Documents within the time-frame required by their needs to avoid immediate and irreparable harm. A loan facility in the amount and under the terms provided by the Bayside DIP Facility Documents is not available from the DIP Lenders without the Debtors granting to the Administrative Agent and the DIP Lenders, subject to the Carve-Out as provided for herein, the DIP Liens and the Superpriority Claim (each as defined herein) under the terms and conditions set forth in the Bayside DIP Facility Documents and herein.

(d)     The terms of the Bayside DIP Facility and the use of Cash Collateral are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and constitute reasonably equivalent value and fair consideration.

(e)     The Bayside DIP Facility has been negotiated in good faith and at arm's length among the Debtors, the Administrative Agent and the DIP Lenders. All of the Debtors' obligations and indebtedness arising under, in respect of, or in connection with the Bayside DIP Facility and the Bayside DIP Facility Documents, including, without limitation, (i) all loans made to the Debtors pursuant to the Bayside DIP Facility Documents and (ii) all Bayside DIP Obligations incurred, have been extended by the Administrative Agent, the DIP Lenders and their respective affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code. Based on the record presented to the Court by the Debtors, it appears that the Administrative Agent, the DIP Lenders, and all of their respective counsel, advisors and consultants are entitled to a finding of "good faith" pursuant to section 364(e) of the Bankruptcy

Code and to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision herein is vacated, reversed or modified, on appeal or otherwise.

(f)     The Debtors have requested entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).  Absent granting the relief sought by this Final Order, the Debtors' estates will be immediately and irreparably harmed.  Consummation of the Bayside DIP Facility is, therefore, in the best interest of the Debtors' estates.

6.     <u>Authorization of the Bayside DIP Facility and the Bayside DIP Facility Documents</u>.

(a)     The Debtors hereby are authorized to enter into each of the Bayside DIP Facility Documents, including the Bayside DIP Agreement as revised since the filing of the Motion, a version of which showing all interim revisions was submitted to the Court at or prior to the Final Hearing.  The Borrowers hereby are authorized to borrow money pursuant to the Bayside DIP Facility Documents and under the Bayside DIP Facility in the principal or face amount of up to $20,000,000.00 inclusive of interest, fees and other expenses provided for in the Bayside DIP Facility Documents (the "<u>Maximum Borrowing</u>"), and the DIP Guarantors are hereby authorized to guaranty such borrowings in an aggregate principal or face amount of up to the Maximum Borrowing, subject to (i) the requirements and conditions contained in the Bayside DIP Facility Documents, including without limitation those conditions relating to an approved budget that is acceptable in form and substance to the Administrative Agent (as amended or modified from time to time with the Administrative Agent's prior written consent, the "<u>Approved Budget</u>," the initial Approved Budget being annexed to the Bayside DIP Agreement as Exhibit C, which shall set forth in reasonable detail all receipts and disbursements of the Debtors on a calendar month basis); and (ii) reserves to be determined in the Administrative

Agent's reasonable credit judgment, including, without limitation, for an amount equal to the Carve-Out.

(b)    In accordance with the terms of this Final Order and the Bayside DIP Facility Documents, the proceeds of the Bayside DIP Facility shall be used to (i) fund the working capital requirements and other financing needs of the Debtors during the pendency of the Chapter 11 Cases, (ii) pay certain transaction fees and other costs and expenses of administration of the Chapter 11 Cases, and (iii) pay fees and expenses (including, without limitation, reasonable attorneys' fees and expenses) owed to the Administrative Agent under the Bayside DIP Facility and the Bayside DIP Facility Documents, including without limitation, reasonable fees and expenses incurred prior to the Petition Date, provided, however, that the Court shall have jurisdiction to determine any dispute concerning such invoices.

(c)    Any and all reasonable fees paid or required to be paid in connection with the Bayside DIP Facility Documents are hereby authorized and shall be paid as detailed in the Bayside DIP Facility Documents.

(d)    The Debtors are hereby authorized and ordered to pay to the Administrative Agent a fee of $500,000 upon the Termination Date (as defined in the Bayside DIP Agreement) (the "DIP Termination Fee") as an administrative expense of the Debtors under sections 503(b) and 507(a) of the Bankruptcy Code without further order of this Court.

(e)    In furtherance of the foregoing and without further approval of the Court, each Debtor is authorized to perform all acts, to make, execute and deliver all instruments and documents (including the execution or recordation of security agreements, mortgages, and financing statements), and to pay from the borrowings under the Bayside DIP Facility Documents all fees and expense reimbursements (including the reasonable fees and expense

reimbursements of the Administrative Agent and the DIP Lenders, and each of their attorneys and advisors as set forth in the Bayside DIP Facility Documents), that may be required or necessary for the Debtors' performance of their obligations under the Bayside DIP Facility, including:

(i)     the execution, delivery and performance of the Bayside DIP Facility Documents and any exhibits attached thereto;

(ii)     with the express written consent of the Administrative Agent, the execution, delivery and performance of one or more amendments to the Bayside DIP Facility Documents for, among other things, the purpose of (A) adding additional financial institutions as DIP Lenders or (B) reallocating the commitments for the Bayside DIP Facility among the DIP Lenders;

(iii)     making the payment to the Administrative Agent or the DIP Lenders, as the case may be, of all of the principal, interest, charges, fees and the reimbursement of present and future expenses (including reasonable fees and expenses, whether incurred prior to, on or after the Petition Date, of attorneys and other advisors; provided that such fees and expenses shall be paid by the Debtors within ten (10) days of the issuance to them of invoices by such attorneys and other advisors, with a copy to the Office of the United States Trustee for the Southern District of New York and the Committee) paid or incurred by the Administrative Agent or the DIP Lenders as provided for in the Bayside DIP Facility Documents, all of which unpaid principal, interest, charges, fees and expenses shall be included and constitute part of the principal amount of the DIP Obligations, be deemed a Superpriority Claim and be secured by a second priority lien, subject only to the first priority lien of the First Lien Secured Parties, on and security

interest in all of the Collateral as and to the extent provided for in this Final Order and the Bayside DIP Facility Documents; and

(iv)　the performance of all other acts required under or in connection with the Bayside DIP Facility Documents.

(f)　The Debtors are authorized, and the automatic stay imposed by section 362 of the Bankruptcy Code is hereby lifted to the extent necessary, to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of additional security agreements, pledge agreements, control agreements, mortgages and financing statements), and to pay fees and expenses that may be required or necessary for the Debtors' performance under the Bayside DIP Facility Documents, including, without limitation, (i) the execution of the Bayside DIP Facility Documents and (ii) the payment of the fees and other expenses described in the Bayside DIP Facility Documents as such become due, including, without limitation, agent fees, commitment fees, underwriting fees, reasonable attorneys', financial advisors' and accountants' fees and disbursements and fees in respect of internal auditors, all as provided for in and subject to the Bayside DIP Facility Documents.  None of such reasonable attorneys', financial advisors', accountants' and internal auditors' fees and disbursements shall be subject to the approval of this Court, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court, provided, however, that the Court shall have jurisdiction to determine any dispute concerning such fees and disbursements.

(g)　Upon execution and delivery of the Bayside DIP Facility Documents and the entry of this Final Order, the Bayside DIP Facility Documents shall constitute valid and binding obligations of the Debtors, enforceable against each Debtor party thereto in accordance

with the terms of the Bayside DIP Facility Documents. No Bayside DIP Obligation, payment, transfer or grant of security under the Bayside DIP Facility Documents or this Final Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including under section 502(d) of the Bankruptcy Code), or subject to any defense, reduction, setoff, recoupment or counterclaim.

7. <u>Unconditional Guarantee Of Subsequently Arranged Or Organized Subsidiaries</u>. Except as otherwise agreed by the Administrative Agent, the obligations of the Borrowers shall further be unconditionally guaranteed by each and every subsequently acquired or organized direct or indirect subsidiary of the Debtors which shall be made a Debtor and a DIP Guarantor immediately upon its acquisition and/or organization.

8. <u>Debt Subordination</u>. With the exception of interest, fees (with the exception of the DIP Termination Fee), and expenses under the Bayside DIP Facility Documents, each DIP Lender hereby postpones and subordinates in right of payment all amounts owed to such DIP Lender under the Bayside DIP Facility Documents to the final payment in cash of all of the First Lien Obligations.

9. <u>DIP Liens</u>.

(a) All Bayside DIP Obligations under the Bayside DIP Facility owing to the Administrative Agent or any DIP Lender, and all guaranties of Bayside DIP Obligations by the DIP Guarantors, shall at all times:

(i) pursuant to section 364(c)(1) of the Bankruptcy Code, be entitled to joint and several super-priority claim status in each of the Chapter 11 Cases and constitute an allowed claim (the "<u>Superpriority Claim</u>") against each Borrower and each DIP Guarantor, with priority over any and all administrative expenses, diminution claims,

adequate protection claims, and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, and subject only to the First Lien Administrative Claim and the Carve-Out, which allowed claims shall be payable from and have recourse to all pre-petition and post-petition property of the Debtors and all proceeds thereof, including but not limited to any avoidance actions or claims arising under chapter 5 of the Bankruptcy Code including the proceeds and products thereof ("Avoidance Actions");

(ii)     pursuant to section 364(c)(2) of the Bankruptcy Code, be secured by a perfected first priority lien on all tangible and intangible property of the Debtors' respective estates that is not subject to valid, perfected and non-avoidable liens as of the Petition Date, including, without limitation, all inventory, accounts receivable, general intangibles, contracts, chattel paper, owned real estate, real property leaseholds, securities, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property and capital stock of subsidiaries of the Debtors; and further including, without limitation, the products and proceeds thereof (the property and assets of the Debtors securing the Bayside DIP Obligations shall be referred to herein as the "Collateral"). For the avoidance of doubt, "Collateral" shall not include Avoidance Actions, except that "Collateral" shall include any avoidance actions arising under section 549 of the

Bankruptcy Code to recover any post-petition transfer of Collateral and the proceeds thereof;

(iii)     pursuant to sections 364(c)(3) and 364(d) of the Bankruptcy Code, be secured by a perfected second priority lien, subject only to the first priority lien of the First Lien Secured Parties, on all Collateral that is subject to valid, perfected and non-avoidable liens including without limitation the Second Lien Security Interests or to valid liens in existence on the Petition Date that are perfected subsequent to such date as permitted by section 546(b) of the Bankruptcy Code (the "<u>Priming DIP Liens</u>"); provided, however, that the Priming DIP Liens shall be junior to the First Lien Security Interests, any replacement liens granted to the First Lien Secured Parties, and the Permitted Encumbrances (as defined in the Bayside DIP Agreement). The liens provided to the Administrative Agent and the DIP Lenders securing the Bayside DIP Obligations, under subsections (ii) and (iii) of this section, the Interim Order, this Final Order or the Bayside DIP Facility Documents shall be referred to herein as the "<u>DIP Liens</u>."

(b)     The provisions of subparagraph (a) shall be subject in each case only to permitted exceptions to be agreed or as set forth in the Bayside DIP Agreement and (x) the allowed and unpaid reasonable fees and expenses of the Debtors' professionals, the Committee and the United States Trustee for the Southern District of New York, and reasonable expenses incurred by members of the Committee in the performance of the duties of the Committee, incurred in the Chapter 11 Cases, to the extent consistent with the Approved Budget on a cumulative basis, through the date that the Carve-Out Notice (as defined below) is received, plus $250,000, (y) the payment of fees pursuant to 28 U.S.C. § 1930 and 28 U.S.C. § 156(c), and any interest thereon, and (z) pursuant to Bankruptcy Code section 726, in the event these cases are

converted to chapter 7, a separate and additional amount of $50,000.00 in the aggregate that may be used for the reasonable fees and expenses of a chapter 7 trustee (clauses (x), (y) and (z) together, the "Carve-Out").  The Carve-Out shall exist at all times, but only be triggered and payable upon (i) the occurrence of an event of default, as defined under the Bayside DIP Agreement ("Event of Default"), and the Administrative Agent's delivery of notice of same (such notice, a "Carve-Out Notice") to the Debtors, counsel for the Debtors, and counsel to the Committee or (ii) the Maturity Date (as defined in the Bayside DIP Agreement). Notwithstanding the foregoing, so long as an Event of Default shall not have occurred and be continuing, the Debtors shall be permitted to pay fees and reimburse expenses allowed and payable under sections 327, 328, 330 and 331 of the Bankruptcy Code, as the same may be due and payable, and the same shall not reduce the Carve-Out.  In all cases, the Carve-Out, Cash Collateral and any loans made under the Bayside DIP Facility shall not include, apply to, or be available for any fees or expenses incurred by any party, including the Debtors or the Committee, in connection with or related to (i) the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against any of the Administrative Agent or the DIP Lenders, including, without limitation, challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the Bayside DIP Obligations, Superpriority Claim, or the DIP Liens, (ii) asserting any claims or causes of action, including, without limitation, claims or actions to hinder or delay the Administrative Agent's or DIP Lenders' assertion, enforcement or realization on the Collateral in accordance with the Bayside DIP Facility Documents or this Final Order or any avoidance actions against the Administrative Agent or the DIP Lenders, or (iii) the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against any of the

Prepetition Secured Parties, including, without limitation, challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the Prepetition Indebtedness, or the Adequate Protection (as defined below) granted herein; provided, however, up to the amount of $50,000.00 shall be permitted to be used by professionals to the Committee to investigate whether the liens of the Prepetition Secured Parties were properly perfected as of the Petition Date and whether the claims of the Prepetition Secured Parties should not be allowed claims. The foregoing shall not be construed as consent to the allowance of any fees and expenses referred to above and shall not affect the right of the Debtors, the Administrative Agent, the DIP Lenders, the Committee, the U.S. Trustee, or other parties in interest to object to the allowance and payment of such amounts.

        10.    <u>Investigation Rights</u>. Notwithstanding anything herein to the contrary, including the Debtors' stipulations and releases herein solely as they relate to the Prepetition Secured Parties and the Prepetition Loan Documents, the Committee, if appointed, and all non-debtor parties in interest (including any trustee appointed or elected in the cases prior to the Investigation Termination Date (as defined below)) and any subsequently appointed trustee in the Cases shall have until sixty (60) days from the date of entry of this Final Order, subject to extension by written agreement between the parties or further Order of this Court (the "<u>Investigation Termination Date</u>") to investigate the validity, perfection, and enforceability of the Second Lien Security Interests and the amount and allowability of the Second Lien Obligations, or to assert any other claims or causes of action against any of the Second Lien Secured Parties. The Committee is hereby granted standing and the authority to file an objection or complaint on behalf of the Debtors' estates raising any and all claims and defenses without further motion seeking authority to bring such action and without further order of this Court. If

the Committee, or any non-debtor party in interest hereafter vested with authority by the Court, determines that there may be a challenge by the Investigation Termination Date, upon three days' written notice to the Debtors and the Second Lien Agent, as applicable (which notice may be given on the Investigation Termination Date), such Committee or other non-debtor party in interest hereafter vested with authority by the Court shall be permitted to file and prosecute an objection or claim related thereto (each, a "Challenge"), and shall have only until the Investigation Termination Date to file such objection or otherwise initiate an appropriate action or adversary proceeding (including a motion seeking authority to file an action) on behalf of the Debtors' estates setting forth the basis of any such challenge, claim or cause of action. If a Challenge is not filed on or before the Investigation Termination Date (or such other later date as extended by the written consent of the Debtors and the Second Lien Agent), the agreements, acknowledgements and stipulations contained in Section 5 of this Final Order shall be irrevocably binding on the estates, Committee and all parties in interest (including, without limitation, a receiver, administrator, or trustee appointed in any of the Cases or in any jurisdiction) without further action by any party or this Court and the Committee and any other party in interest (including, without limitation, a receiver, administrator, or trustee appointed in any of the Cases or in any jurisdiction) shall thereafter be forever barred from bringing any Challenge.

11. <u>Protection of DIP Lenders' Rights</u>.

(a) The Events of Default contained in the Bayside DIP Facility Documents are hereby approved in their entirety and incorporated by reference into this Final Order. Nothing in this order shall prevent the Debtors from seeking relief from this Court to extend any of the dates set forth in this Section 11(a) as a result of exigent circumstances and nothing herein

shall prejudice any party's rights to object to such extension. Without limiting the foregoing, the occurrence of any of the following would constitute an Event of Default upon which the Administrative Agent is hereby authorized to exercise its remedies in accordance with the provisions of the Bayside DIP Facility Documents and this Final Order:

(i)     any of the Chapter 11 Cases shall be dismissed, terminated or converted to a case under Chapter 7 of the Bankruptcy Code or any Borrower or any DIP Guarantor shall file a motion or other pleading seeking the dismissal of any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise; a trustee under Chapter 7 or Chapter 11 of the Bankruptcy Code, a responsible officer or an examiner with enlarged powers relating to the operation of the business (powers beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code) under section 1106(b) of the Bankruptcy Code shall be appointed in any of the Chapter 11 Cases and the order appointing such trustee, responsible officer or examiner shall not be reversed or vacated within thirty (30) days after the entry thereof; or an application shall be filed by any Borrower or any DIP Guarantor for the approval of any other superpriority claim or other charge of any kind (other than the Carve-Out) in any of the Chapter 11 Cases which is pari passu with or senior to the claims of the Administrative Agent and the DIP Lenders against any Borrower or any DIP Guarantor, or there shall arise or be granted any such pari passu or senior superpriority claim or other charge of any kind;

(ii)     the Court shall enter an order or orders granting relief from the automatic stay applicable under section 362 of the Bankruptcy Code, as may be extended from time to time, or shall enter any order granting relief to the holder or holders of any security interest, which permits foreclosure (or the granting of a deed in lieu of foreclosure or the

like) or any other enforcement of security interests on any assets of any Borrower or any DIP Guarantors which have a value in excess of $50,000 in the aggregate, other than those assets that are subject to a security interest granted by any Borrower or any DIP Guarantor in favor of a lessor pursuant to a Capital Lease[2] permitted under the Bayside DIP Agreement;

(iii)    except as otherwise permitted in accordance with the bidding procedures attached to the Sale Motion, the Debtors shall take any action directly or indirectly for the purpose of, or that results in, delaying, preventing, frustrating or impeding approval, acceptance, confirmation, consummation or implementation of the Bayside Sale, as the case may be, including encouraging or supporting any non-Debtor party in furtherance of any such action, taking any action to authorize, approve, consummate or enter into an Alternative Transaction;

(iv)    the Court shall not have approved each of (a) the bidding procedures contemplated by the Sale Motion, (b) the stalking horse asset purchase agreement contemplated by the Sale Motion, and (c) Bayside as the stalking horse bidder on the terms contemplated by the Sale Motion, on or prior to October 6, 2011;

(v)    the Debtors shall not have conducted an auction as set forth in the Sale Motion, as approved by the Court, on or prior to November 7, 2011;

(vi)    an order of the Court in form and substance acceptable to the Administrative Agent approving the Bayside Sale shall not have been entered on or prior to November 8, 2011;

(vii)    the Sale Date shall not have occurred on or prior to November 23, 2011;

---

[2]    All capitalized terms used in this subjection 11(a) and not defined in this Final Order shall have the meaning ascribed to them in the Bayside DIP Agreement.

(viii)	an order of the Court shall be entered reversing, staying, vacating or (without the written consent of the Administrative Agent) otherwise amending, supplementing or modifying any of the Orders or any order approving the Sale Motion or the Bayside Sale in a manner that is materially adverse to the DIP Lenders as determined by the Administrative Agent;

(ix)	any material breach by any Borrower or DIP Guarantor of any of the terms, conditions, covenants or conditions applicable to it under either the Interim Order or this Final Order (beyond any applicable cure period, if any);

(x)	any Debtor shall bring an action seeking reconsideration of either the Interim Order or this Final Order; or

(xi)	except as otherwise provided in the bidding procedures attached to the Sale Motion, any Debtor shall file or submit a motion or application or otherwise seek approval from the Court to permit, or shall conduct, a sale of any material portion of the Borrowers' or DIP Guarantors' assets (under section 363 of the Bankruptcy Code or otherwise) other than the Bayside Sale without the prior written consent of the Administrative Agent and each of the DIP Lenders.

(b)	Until all Bayside DIP Obligations (including any non-contingent claim for indemnification by the Administrative Agent or the DIP Lenders) shall have been indefeasibly paid in full in cash (other than contingent indemnity obligations as to which no claim has been asserted when all other amounts have been paid) and the commitments under the Bayside DIP Facility Documents have terminated (the occurrence of all such actions, collectively, the "DIP Pay-Out"), the First Lien Secured Parties shall, for the first seven (7) days following the occurrence of an Event of Default contained in Section 7 of the Bayside DIP Agreement, (i) take

no action to foreclose upon or recover in connection with the liens granted thereto in connection with the First Lien Secured Obligations, or otherwise exercise remedies against any Collateral or seek court authorization to exercise remedies against any Collateral or seek to lift the automatic stay to exercise any remedies against any Collateral, except as expressly permitted herein, and (ii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in the Collateral, unless required by applicable state law to continue the perfection of valid and unavoidable liens or security interests in effect as of the Petition Date.

(c)     Upon entry of this Final Order, the automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified (subject to the provisos in this subparagraph) to the extent necessary to permit the Administrative Agent and the DIP Lenders to exercise immediately upon the occurrence of an Event of Default or the Maturity Date, all rights and remedies under the Bayside DIP Facility Documents without further order of or application to the Bankruptcy Court; provided that prior to the exercise of any setoff rights, the enforcement of any liens or the exercise of any other remedies with respect to the Collateral, the Administrative Agent shall provide the Borrowers, the Committee and the United States Trustee for the Southern District of New York (with copies to counsel to the First Lien Agent and Second Lien Agent) with seven (7) business days' prior written notice; provided further, that upon receipt of any such notice, the Borrowers may only make disbursements in the ordinary course of business and with respect to the Carve-Out, but may not disburse any other amounts; provided further, that in any hearing after the giving of the aforementioned notice, the only issue that may be raised by any party in opposition thereto being whether, in fact, an Event of Default has occurred and is continuing and, in the event that any such party does dispute the occurrence

and continuation of an Event of Default, any modification of the automatic stay pursuant to hereto shall be subject to reversal.

12. <u>Bayside DIP Facility Fees</u>. All reasonable fees payable and expenses reimbursable by the Debtors to the Administrative Agent and the DIP Lenders under the Bayside DIP Facility Documents shall promptly be paid by the Debtors in accordance with the Bayside DIP Facility Documents and this Final Order, and the Debtors may pay such fees and expenses from the proceeds of the Bayside DIP Facility. The Debtors hereby are authorized to pay all such reasonable fees and expense reimbursements (together with any applicable sales, use or similar taxes) arising in connection with any matter referred to in the Bayside DIP Facility Documents, without the necessity of the Debtors, the Administrative Agent or the DIP Lenders filing any further application with the Court for approval of payment of such fees and expense reimbursements or maintaining compliance with the U.S. Trustee guidelines. For the avoidance of doubt, the Debtors are authorized to pay the reasonable fees and disbursements of the attorneys and other advisors of Bayside without the necessity of such attorneys or other advisors filing retention applications or fee applications with the Court.

13. <u>Further Acknowledgements of the Debtors</u>. In connection with the Bayside DIP Facility, the Debtors further acknowledge, represent, stipulate and agree, among other things, that:

(a) the Debtors have obtained all authorizations, consents and approvals required to be obtained from, and have made all filings with and given all notices required to be made or given to, all federal, state and local governmental agencies, authorities and instrumentalities in connection with the execution, delivery, performance, validity and enforceability of the Bayside DIP Facility Documents to which any Debtor is a party;

(b)     until the DIP Pay-Out, the Debtors agree that they will not prime or seek to prime the DIP Liens by offering a subsequent lender or other party a lien on the Collateral with a priority that is superior to or <u>pari</u> <u>passu</u> with the DIP Liens; <u>provided</u>, <u>that</u> (i) the Debtors may offer or provide a subsequent lender or other party a lien on the Collateral with a priority that is superior to or <u>pari</u> <u>passu</u> with the DIP Liens only upon a DIP Pay-Out, or (ii) the Debtors may offer or provide the First Lien Secured Parties a lien on the Collateral with a priority that is superior to or <u>pari</u> <u>passu</u> with the DIP Liens in the event that the Bayside DIP Lenders cease funding under the Bayside DIP Facility for five (5) business days, solely to the extent that the First Lien Secured Parties provide additional funds to the Debtors; and

(c)     until the DIP Pay-Out, the Debtors shall not permit to exist any administrative expense claim against any Borrower or any DIP Guarantor (now existing or hereafter arising) of any kind or nature whatsoever, including any administrative expenses specified in or arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726, 1113 and 1114 of the Bankruptcy Code, that has a priority that is equal or superior to the priority of the Superpriority Claim, other than (i) the First Lien Administrative Claim, and (ii) the Carve-Out.

14.     <u>Use of Cash Collateral</u>.  Upon entry of this Final Order and conditioned solely on the grant of Adequate Protection as provided herein, the Second Lien Secured Parties have consented to the Debtors' use of the Cash Collateral[3] for the operation of their businesses in accordance with the Approved Budget.  The Debtors' right to use Cash Collateral, subject to the Carve-Out, shall terminate (i) after the occurrence and during the continuance of any Event or

---

[3]     For the avoidance of doubt, the "Cash Collateral" shall include, without limitation, any proceeds of the Prepetition Collateral and deposited funds or any other funds on deposit at the Prepetition Secured Parties or at any other institution as of the Petition Date.

Default under the Bayside DIP Facility Documents and (ii) upon the Maturity Date of the Bayside DIP Facility, <u>provided</u> that prior to termination of the Debtors' right to use Cash Collateral, the Administrative Agent shall provide the Debtors with seven (7) days' prior written notice.  Nothing in this Final Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in the Interim Order, this Final Order, or the Bayside DIP Facility Documents.

15.     <u>Prepetition Secured Parties' Adequate Protection</u>.

(a)     In consideration for the priming of the Second Lien Secured Parties' liens, claims and interests in the Prepetition Collateral (solely upon the terms and conditions of this Final Order) and the use of Cash Collateral, the Second Lien Secured Parties shall receive the following as adequate protection (the "<u>Second Lien Adequate Protection</u>," together with the First Lien Adequate Protection, the "<u>Adequate Protection</u>"):

(i)     To the extent there is a diminution in the value of the interest of the Second Lien Secured Parties in the Prepetition Collateral (whatever the reason for such diminution), the Second Lien Agent, for the benefit of the Second Lien Secured Parties, is granted replacement liens on all of the assets of the Debtors (the "<u>Second Lien Replacement Liens</u>" or the "<u>Replacement Liens</u>"), which liens are valid, binding, enforceable and fully perfected as of the date hereof and shall be subordinate only to the First Lien Security Interests, any replacement liens granted to the First Lien Secured Parties, the DIP Facility Liens, and the Carve-Out.  For the avoidance of doubt, the Second Lien Replacement Liens shall not extend to any Avoidance Actions except

avoidance actions arising under section 549 of the Bankruptcy Code and the proceeds thereof; and

(ii)    An allowed administrative claim (the "<u>Second Lien Administrative Claim</u>") against the Debtors' estates under section 507(b) of the Bankruptcy Code to the extent that the Second Lien Replacement Liens do not adequately protect the diminution in the value of the Prepetition Collateral, which Second Lien Administrative Claim, if any, shall be junior and subordinate only to the First Lien Administrative Claim, if any, the Superpriority Claim and the Carve-Out.  For the avoidance of doubt, the Second Lien Administrative Claim shall not extend to any Avoidance Actions except avoidance actions arising under section 549 of the Bankruptcy Code and the proceeds thereof.

(b)    If, after the entry of this Final Order, the Debtors enter into a financing other than as contemplated by this Final Order or the Bayside DIP Agreement (an "<u>Alternative Financing</u>"), the Second Lien Secured Parties are deemed to have withheld their consent to such Alternative Financing to the extent that the Alternative Financing purports to prime the Second Lien Secured Parties' liens, claims and interests in the Prepetition Collateral, including the Second Lien Security Interests, Second Lien Replacement Liens, and Second Lien Administrative Claim.

16.    <u>No Marshalling</u>.  Subject to entry of the Fnal Order, in no event shall the Administrative Agent, the DIP Lenders or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral or subject to any "equities of the case" claims under section 552(b) of the Bankruptcy Code with respect to the Bayside DIP Obligations and the Bayside DIP Facility and the Second Lien Obligations and the Second Lien Loan Documents.

17.     <u>Limitation on Charging Expenses Against Collateral</u>.  Except to the extent of the Carve-Out, no expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under any chapter of the Bankruptcy Code, shall be charged against or recovered from the Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law without the prior written consent of the Second Lien Agent and Administrative Agent. No such consent shall be implied from any other action, inaction, or acquiescence by the Second Lien Agent, Administrative Agent, Prepetition Secured Parties or DIP Lenders; <u>provided</u> that, the foregoing waiver of the Debtors' right to seek to surcharge the Collateral shall apply solely for the benefit of the Second Lien Agent, Administrative Agent, Prepetition Secured Parties and the DIP Lenders.

18.     <u>Perfection of DIP Liens and Replacement Liens</u>.

(a)     The Debtors stipulate and consent that all DIP Liens and Replacement Liens granted herein and in the Bayside DIP Facility Documents to or for the benefit of the Second Lien Agent, Administrative Agent, Prepetition Secured Parties and the DIP Lenders shall, pursuant to this Final Order, be, and hereby are, valid, enforceable and perfected, effective as of the Petition Date, and (notwithstanding any provisions of any agreement, instrument, document, the Uniform Commercial Code or any other relevant law or regulation of any jurisdiction) no further notice, filing or other act shall be required to effect such perfection.

(b)     The Debtors, Second Lien Agent, Administrative Agent, Prepetition Secured Parties and DIP Lenders are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction or take any other action to validate and perfect the liens and

security interests granted hereunder. Whether or not the Second Lien Agent, Administrative Agent, Prepetition Secured Parties or DIP Lenders shall choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments or otherwise confirm perfection of the liens and security interests granted hereunder, the Debtors stipulate that such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of this Final Order. Upon the request of the Second Lien Agent or Administrative Agent, the Debtors, without any further consent of any party, are authorized to take, execute and deliver such instruments (in each case without representation or warranty of any kind) to enable the Second Lien Agent or Administrative Agent to further validate, perfect, preserve and enforce the DIP Liens or Replacement Liens, and to provide additional evidence of perfection.

(c)     A certified copy of this Final Order may, in the discretion of any of the Second Lien Agent, Administrative Agent, Prepetition Secured Parties and DIP Lenders be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copy of this Final Order for filing and recording. The Second Lien Agent, Administrative Agent, Prepetition Secured Parties or DIP Lenders may deliver a copy of this Final Order to any third parties having possession or control of the Collateral.

19.     <u>Preservation of Rights Granted Under This Final Order</u>.

(a)     No claim or lien having a priority superior to or <u>pari</u> <u>passu</u> with those granted to the Administrative Agent and the DIP Lenders by this Final Order shall be granted or

allowed until the DIP Pay-Out, except as expressly set forth herein. The DIP Liens shall not be (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (ii) subordinated to or made pari passu with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise, except as expressly set forth herein.

(b)     If an order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide that (x) the Superpriority Claim and DIP Liens granted to the Administrative Agent and the DIP Lenders, and the Administrative Claims and Replacement Liens granted to the Prepetition Secured Parties pursuant to this Final Order shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until the DIP Pay-Out shall have been paid and satisfied in full (and that such Superpriority Claim and DIP Liens, Administrative Claims and Replacement Liens shall, notwithstanding such dismissal, remain binding on all parties in interest) and (y) the Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims and liens referred to in (x) above.

(c)     If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the validity of any Bayside DIP Obligations incurred prior to the actual receipt of written notice by the Administrative Agent of the effective date of such reversal, stay, modification or vacation or (ii) the validity or enforceability of any security interest, lien or priority authorized or created hereby or pursuant to the Bayside DIP Facility Documents with respect to any Bayside DIP Obligations. Notwithstanding any such reversal, stay, modification or vacation, any Bayside DIP Obligations incurred by the Debtors to the Administrative Agent or the DIP Lenders prior to the

actual receipt of written notice by the Administrative Agent of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the provisions of this Final Order, and the Administrative Agent and the DIP Lenders shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Final Order and pursuant to the Bayside DIP Facility Documents with respect to all Bayside DIP Obligations.

(d)　　　Except as expressly provided in this Final Order or in the Bayside DIP Facility Documents, the DIP Liens, the Superpriority Claim and all other rights and remedies of the Administrative Agent and the DIP Lenders, and the Prepetition Secured Parties' Adequate Protection granted by the provisions of this Final Order and the Bayside DIP Facility Documents shall survive, and shall not be modified, impaired or discharged by the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7, dismissing any of the Chapter 11 Cases, terminating the joint administration of the Chapter 11 Cases or by any other act or omission, nor shall the DIP Liens, the Superpriority Claim or any of the other rights and remedies of the Administrative Agent or the DIP Lenders granted by the provisions of this Final Order and the Bayside DIP Facility Documents be modified, impaired or discharged by the entry of an order confirming a plan of reorganization in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors will waive any discharge as to any remaining Bayside DIP Obligations. The terms and provisions of this Final Order and the Bayside DIP Facility Documents shall continue in the Chapter 11 Cases, in any successor cases if the Chapter 11 Cases are substantively consolidated, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Superpriority Claim, and all other rights and remedies of the Administrative Agent and the DIP Lenders granted by the provisions of this

Final Order and the Bayside DIP Facility Documents shall continue in full force and effect until the DIP Pay-Out.

20.    <u>Use of Proceeds</u>.  Notwithstanding anything to the contrary contained herein, the proceeds of the Bayside DIP Facility shall be subject to, and used solely in a manner consistent with, this Final Order, the Approved Budget, and the terms and conditions contained in the Bayside DIP Facility Documents, including, without limitation, those contained in Section 5.13 of the Bayside DIP Agreement.

21.    <u>Notice of Professional Fees</u>.  All professionals receiving payment of fees and expenses out of the proceeds of the Bayside DIP Facility and under the Approved Budget (including, without limitation, advisors for the Debtors, the claims agent, advisors for the Committee, and, to the extent they receive payment from the Debtors' estates, advisors for the Prepetition Secured Parties) shall, and are hereby ordered and directed to, no later than the tenth (10th) business day of each calendar month provide the Administrative Agent with a non-binding estimate of the amount of fees incurred in the prior month for the purpose of establishing the Debtors' compliance with the Approved Budget.

22.    <u>Right to Credit Bid</u>.  The rights of the Administrative Agent and the DIP Lenders to credit bid the Bayside DIP Obligations, and the rights of the Second Lien Agent and the Second Lien Secured Parties to credit bid the obligations arising under the Second Lien Documents (pursuant to section 363(k) of the Bankruptcy Code and/or applicable law), in whole or in part, in connection with any sale or disposition of assets in the Chapter 11 Cases (including in connection with a plan of reorganization for which confirmation is sought under section 1129(b)(2)(A)(i) of the Bankruptcy Code) are hereby expressly reserved and preserved by this Order.

23.    <u>After Acquired Property</u>.   Pursuant to section 552(a) of the Bankruptcy Code, all property acquired by the Debtors after the Petition Date, including, without limitation, all unencumbered Collateral of the Debtors pledged or otherwise granted to the Administrative Agent and the DIP Lenders, including without limitation all proceeds of the Bayside DIP Facility, pursuant to the Bayside DIP Facility Documents and this Final Order is not and shall not be subject to any lien of any person or entity, with the exception of the Replacement Liens granted to the Prepetition Secured Parties pursuant to this Final Order, resulting from any security agreement entered into by the Debtors prior to or after the Petition Date, except to the extent that such property constitutes proceeds of property of the Debtors that is subject to a valid, enforceable, perfected, and unavoidable lien as of the Petition Date which is not subject to subordination under section 510(c) of the Bankruptcy Code or other provision or principles of applicable law.

24.    <u>Insurance Policies</u>.   Upon entry of this Final Order, the Administrative Agent and DIP Lenders shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtors which in any way relates to the Collateral of the Debtors, and the payment of any insurance proceeds shall be made in accordance with the priorities set forth in this Final Order.

25.    <u>Amendments and Modifications</u>.   The Debtors and the Administrative Agent may enter into any non-material amendments or modifications to the Bayside DIP Facility Documents without notice or a hearing or further order of this Court, <u>provided</u>, <u>however</u>, that any such modifications shall be filed with the Court.  Any amendments or modifications to this Final Order (including, without limitation, the filing of any motion seeking such amendments or

modifications) shall require the prior written consent of the Administrative Agent and Second Lien Agent.

26. <u>Final Order Governs</u>. Except as otherwise specifically provided in this Final Order, in the event of any conflict between the provisions of this Final Order, the Motion and the Bayside DIP Facility Documents, the provisions of this Final Order shall govern.

27. <u>Binding Effect; Successors and Assigns</u>. The Bayside DIP Facility Documents and the provisions of this Final Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Cases, including the Administrative Agent, the DIP Lenders, the Second Lien Agent, the Prepetition Secured Parties, the Committee and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors) and shall inure to the benefit of the Administrative Agent, the DIP Lenders, the Second Lien Agent, the Prepetition Secured Parties and the Debtors and their respective successors and assigns; <u>provided</u> that the Administrative Agent and the DIP Lenders shall have no obligation to extend any financing to any chapter 7 trustee, chapter 11 trustee, examiner or similar responsible person appointed for the estates of the Debtors. In determining to make any loan under the Bayside DIP Facility Documents or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the Bayside DIP Facility Documents, the Administrative Agent and the DIP Lenders shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 <u>et</u> <u>seq</u>., as amended, or any similar federal or state statute).

Dated: October 6, 2011
New York, New York

                                              */s/ Allan L. Gropper*
                                         UNITED STATES BANKRUPTCY JUDGE